UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

        v.                                    Criminal No. 2:18-cr-38-1

Rodolfo Davila

### <u>OPINION AND ORDER</u>
(Doc. 352)

      Rodolfo Davila, proceeding *pro se*, has filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct a Sentence.  (Doc. 352.)  Davila was convicted following his pleas of guilty to one count of engaging in a conspiracy to distribute fentanyl and 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(b)(1) and 846, one count of maintaining a drug involved premises, in violation of 21 U.S.C. § 856(a)(2), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  (Docs. 66, 199, 313.)  Davila pleaded guilty pursuant to a plea agreement.  (Docs. 193, 199.)  On June 15, 2020, Davila was sentenced to 151-month prison terms on counts one and two and a 120-month prison term on count three, all to run concurrently, to be followed by concurrent four- and three-year terms of supervised release.  (Docs. 310, 317.)  The Court also ordered forfeiture of his real property in Windsor, Vermont.  The Judgment was issued June 18, 2020.  (Doc. 313.)  The same day, Davila filed a Notice of Appeal.  (Doc. 314.)  On May 18, 2021, the Second Circuit affirmed the Judgment, rejecting Davila's arguments that the Court abused its discretion by denying his motion to withdraw his guilty plea and erred by ordering the forfeiture of his real property. (Doc. 345.)

In his eight-page § 2255 Motion, Davila seeks to vacate his guilty pleas, convictions, and sentence asserting that his counsel was ineffective and requests that the court appoint him counsel pursuant to 18 U.S.C. § 3006A.  Specifically, he claims that his counsel incorrectly advised him that the sale of drugs to a confidential informant was sufficient to establish the offense of conspiracy.  (Doc. 352.)  On October 14, 2021, a procedural order was entered directing the United States Attorney to respond to Davila's claims.  (Doc. 354.)  Subsequently, on November 18, 2021, the Court granted the unopposed motion of the United States compelling the production of an affidavit from defense counsel responding to Davila's assertion of ineffective assistance of counsel.  (Docs. 355, 356.)  On February 7, 2022, Attorney Mark A. Kaplan filed an Affidavit in response to Davila's § 2255 Motion.  (Doc. 361.)

The government argues in opposition that Davila's § 2255 Motion fails because the Court should credit his counsel's assertion and not accept Davila's self-serving claim that is contradicted by his own statements at sentencing.  (Doc. 363 at 6–7.)  The government also asserts the Court should deny Davila's motion without a hearing.  *Id.* at 7–8.  Although Davila did not file a reply in further support of his motion, on August 16, 2022, he filed an Affidavit in support of his § 2255 Motion.  (Doc. 367.)

For the reasons set forth below, Davila's § 2255 Motion is DENIED.

## Factual and Procedural Background

### I.   Complaint and Indictment

On April 2, 2018, a criminal Complaint was filed with the Court charging Davila with one count of distribution of heroin and a warrant was issued for his arrest.  (Doc. 1.)  On April 5, Davila was arrested and made an initial appearance.  (Docs. 8, 9.)  On April 11, the Grand Jury for the District of Vermont ("grand jury") returned an Indictment charging Davila with one count

of distribution of heroin.  (Doc. 15.)  On April 17, represented by retained counsel, Davila was ordered detained pending trial.  (Doc. 25 (text-only order); Doc. 27.)

## II.     First and Second Superseding Indictments

On April 25, 2018, the grand jury returned a First Superseding Indictment charging Davila with conspiracy to distribute fentanyl and 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846, one count of maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(2), two counts of distribution of heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and one count of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).  The First Superseding Indictment also included a Forfeiture Notice relative to two properties owned by Davila.  (Doc. 28.)  On May 1, Davila appeared for arraignment and the Court entered pleas of not guilty to the charges on Davila's behalf.  (Doc. 37 (text-only order).)

On August 15, 2018, the grand jury returned a Second Superseding Indictment charging Davila with the additional charges of one count of conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), as well as a total of seven counts of distribution of fentanyl and/or heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).  (Doc. 66.)  On August 29, Davila appeared for arraignment and the Court entered pleas of not guilty to each of the counts of the Second Superseding Indictment on Davila's behalf.  (Doc. 82 (text-only order).)[1]

---

[1] On July 2, 2019, the Court issued an Opinion and Order denying Davila's motion to suppress physical evidence.  (Doc. 167.)

### III.    Plea and Motion to Withdraw Plea

On August 13, 2019, a plea agreement in which Davila agreed to plead guilty to one count of conspiracy to distribute fentanyl and 100 grams or more of heroin, one count of maintaining a drug involved premises, and one count of being a felon in possession of a firearm was filed with the Court.  (Doc. 193.)  On August 14, a Superseding Information containing the three counts was filed.  (Doc. 194.)  On August 19, Davila appeared for a change of plea hearing, and the Court reviewed the plea agreement, however, the hearing was continued to address an issue related to forfeiture.  (Doc. 196 (text-only order).)

On August 26, 2019, the parties filed a supplement to the plea agreement which permitted Davila to argue that the forfeiture of certain real property would violate his Eighth Amendment rights.  (Doc. 198.)  The same day, with benefit of counsel[2], Davila pleaded guilty to one count of conspiracy to distribute fentanyl and 100 grams or more of heroin, one count of maintaining a drug involved premises, and one count of being a felon in possession of a firearm.  (Doc. 199 (text-only entry); Doc. 219.)  Davila pleaded guilty pursuant to a written Plea Agreement, filed August 13, 2019—and reaffirmed in the August 26 Supplement—in which he conceded that he "agrees to plead guilty because he is, in fact, guilty of the [included] crimes."  (Doc. 193 at 2, ¶ 3; *see also* Doc. 198.)  During the change of plea hearing, Davila confirmed to the Court that he had reviewed, understood, and signed the plea agreement.  (Doc. 219 at 12:22–13:9.)  The Plea Agreement stated, among other things, Davila "admits that his conduct as a member of the conspiracy, including the reasonably foreseeable conduct of other members of the conspiracy, involved 1 kilogram or more of a mixture and substance containing a detectable amount of heroin."  (Doc. 193 at 6, ¶ 14.

---

[2]  Before changing his plea, Davila represented to the Court that he was satisfied with the representation of his Attorney, Mr. Kaplan.  (Doc. 219 at 6:3–5.)

During the change of plea hearing, the government explained the factual basis for the

charges as follows:

> At trial the government would prove beyond a reasonable doubt that from in or about late 2016 through April 5th of 2018[,] the defendant Rodolfo Davila knowingly and willingly conspired with David Cheney, Elizabeth Gonzalez-Rivera, Shawn Palmer and Gary Desilets to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule 1 controlled substance, and fentanyl, a Schedule 2 controlled substance.
>
> Beginning in or about late 2016[,] the [D]efendant began distributing heroin and fentanyl in and around southern Vermont.  He eventually moved to 186 Knapp Pond road in Cavendish, Vermont, where he resided in a trailer owned by Shawn Palmer.  The [D]efendant provided Shawn Palmer with heroin in lieu of rent payments and distributed heroin from Shawn Palmer's residence.  In addition, Shawn Palmer and David Cheney distributed heroin they obtained from the [D]efendant out of this residence.
>
> In late December of 2016, the [D]efendant purchased 55 River Street in Windsor, Vermont, paying more than $148,000 in cash.  The [D]efendant and David Cheney then moved out of Shawn Palmer's trailer and into 55 River Street. 55 River Street is a multiunit dwelling and the Defendant rented out the apartments he did not reside in.
>
> . . . [F]rom in or about early 2017 through April 5th of 2018[,] the [D]efendant managed and controlled this residence at 55 River Street both as an owner and an occupant. . . . [W]hile at 55 River Street, the [D]efendant distributed heroin and fentanyl to government informants on February 2nd, February 5th, March 14th, and March 19th of 2018. . . . [H]e [also] distributed to government informants in Cavendish, Vermont, on March 9th, March 13th and April 3rd, 2017.
>
> The [D]efendant's sister, Elizabeth Gonzalez-Rivera, regularly transported the bulk heroin from Massachusetts to the [D]efendant in Vermont.  The [D]efendant then provided Ms. Gonzalez-Rivera with . . . the proceeds from his distribution of heroin and fentanyl which [s]he transported back to Massachusetts.
>
> On June 7th of 2017[,] the [D]efendant provided Gonzalez-Rivera with United States currency constituting the proceeds of heroin and fentanyl distribution.  After law enforcement observed her leaving the [D]efendant's residence[,] Gonzalez-Rivera was stopped by police on Interstate 91 southbound. More than $38,000 was located in her purse.

(Doc. 219 at 20:10–22:18.)

Following this explanation, the Court asked: "Is that what happened, Mr. Davila?"  *Id.*

at 24:5.  Attorney Kaplan, Davila's counsel, responded:

5

> We don't agree that Mr. Davila was in a conspiracy with others; that the
> conspiracy involved a thousand kilograms or more; that the conspiracy involved
> some of the individuals that the government has referred to.  We don't necessarily
> agree to the extent of the sister's involvement and some other factual disputes
> with regard to whoever distributed or didn't, how much was distributed, how
> much was personal use, but overall we're certainly not contesting the crucial
> elements.  Some of the other facts may be contested during the sentencing
> proceedings.

*Id.* at 24:7–18.  The Court replied: "Well, Mr. Davila, you understand the representation made by

the government that you were engaged in a conspiracy.  The objective [] of the conspiracy [was]

to distribute . . . over 100 grams of heroin as well as fentanyl, and to that extent, is that

accurate?" *Id.* at 24:19–25.  Davila answered: "Yes, sir." *Id.* at 25:1.  The Court inquired

whether Davila still wished to plead guilty and he confirmed he did.  *Id.* at 25:9–11.  Davila

further affirmed to the Court that he was pleading guilty "freely and voluntarily with the full

understanding of the nature of the charges." *Id.* at 25:12–15.

On September 30, 2019, Davila moved to withdraw his guilty plea.  (Doc. 215.)  His

motion focused on the stipulation in his plea agreement that his offense involved one kilogram or

more of heroin.  The Court held a status conference on November 7, 2019, to confirm the facts

relevant to Davila's motion.  On December 5, 2019, without a further hearing, the Court issued

an Opinion and Order denying Davila's motion to withdraw his guilty plea.  The Court

recognized that Davila was "not asserting his innocence as to the charges, but merely disputing

the quantity of heroin involved in the conspiracy." (Doc. 250 at 4.)  The Court noted that

"Defendant's offense involved at least $361,000 of profits . . . [and] such a large sum of

conspiracy revenue very likely corresponds to more than one kilogram of heroin." *Id.* at 4 (citing

Doc. 224 at 10).  Following the Court's decision, on December 16, 2019, Davila was appointed

new counsel, Attorney Devin McLaughlin.

**IV.    Presentence Investigation Report**

The Probation Office prepared a Presentence Investigation Report dated February 21, 2020, and revised March 23, 2020.  The PSR noted that Davila "admitted that his conduct as a member of the conspiracy, including the reasonably foreseeable conduct of other members of the conspiracy, involved one kilogram or more of a mixture and substance containing a detectable amount of heroin."  (PSR at 5, ¶ 12.)  The PSR detailed six controlled purchases from Davila conducted by the Vermont Drug Task Force using confidential informants.  *Id.* at 7, ¶ 19.  It further detailed Davila's involvement in the conspiracy including witness reports of: Davila using a residence from which to sell heroin in exchange heroin, *id.* at 8, ¶ 24; 11, ¶ 40; Davila traveling to Massachusetts on multiple occasions with different individuals to resupply with heroin, *id.* at 8, ¶ 25; 11, ¶ 47; at 13, ¶ 61; at 14, ¶ 74; at 15, ¶ 88; other individuals selling heroin on behalf of Davila, *id.* at 9, ¶ 31; 11, ¶ 42; 13, ¶¶ 66, 69; 15, ¶ 85; and other individuals purchasing bulk quantities from Davila for resale, *id.* at 9, ¶ 29; at 15, ¶ 85.  The PSR also described Davila and another individual bringing cash to banks and converting it to bank checks. *Id.* at 10, ¶ 36.

Based on the total offense level, which included a reduction for acceptance of responsibility, and Davila's criminal history category, the guideline imprisonment range was 324 to 405 months for count one and the statutory maximums were 240 months for count two and 120 months for count 3.  (PSR at 32, ¶ 188.)

**V.    Sentencing**

On June 15, 2020, Davila appeared for sentencing.  The Court confirmed that Davila had read the PSR and that he had reviewed it with his new counsel, Attorney McLaughlin.  (Doc. 317 at 3:9–14.)  Attorney McLaughlin, confirmed that Davila was "not objecting to anything in the

report factually or legally." *Id.* at 3:7–8.  Davila himself confirmed that he did not see any factual inaccuracies in the report.  *Id.* at 3:12–16.  The court imposed a term imprisonment of 151 months on counts one and two and 120 months on count three, all to run concurrently, to be followed by a four-year term of supervised release.  *Id.* at 48:7–14.  The government moved to and the Court dismissed the remaining counts.  *Id.* at 52:4–6.  Davila was advised of his right to appeal from the sentence.  (Doc. 317 at 51:18–52:3.)  Judgment entered June 18, 2020, and Davila filed a Notice of Appeal the same day.  (Docs. 313, 314.)

## VI.    Direct Appeal

On appeal, Davila argued that this Court abused its discretion by denying his motion to withdraw his guilty plea and by ordering the forfeiture of his real property.[3]  *United States v. Davila*, 852 F. App'x 35, 37 (2d Cir. 2021).  The Second Circuit explained that "shortly after entering his plea, Davila had a 'change of heart' about whether to admit that the conspiracy in which he participated involved one kilogram or more of heroin."  *Id.*  The Second Circuit noted "Davila repeatedly stated under oath during his plea colloquy that he knew and understood the contents of his plea agreement, that he wished to plead guilty, and that his decision was voluntary."  *Id.*  On May 18, 2021, the Second Circuit rejected Davila's arguments, denied his appeal, and affirmed this Court's judgment.

## Analysis

## I.    Controlling Legal Standards

### A.    Legal Standards Governing 28 U.S.C. § 2255 Motions

Under 28 U.S.C. § 2255, a federal prisoner may claim the right to be released if their sentence was "imposed in violation of the Constitution or laws of the United States, or . . . the

---

[3] The government also sought and was granted forfeiture of two Vermont properties Davila had purchased.  *See* Doc. 312.  The issue of forfeiture is not relevant to the instant motion.

court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). As the Second Circuit has instructed, § 2255 review is "narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources." *United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018) (internal quotation marks omitted). The petitioner bears the burden of establishing that he is entitled to relief under § 2255. *See Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995).

Generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). But claims of ineffective assistance of counsel can be raised for the first time in a § 2255 Motion. *See id*. Here, although Davila did not appeal the issue of his participation in a conspiracy, he raises claims of ineffective assistance of counsel.

### B.     Legal Standards Governing Ineffective-Assistance-of-Counsel Claims

In criminal proceedings, a defendant has a Sixth Amendment right to effective assistance from his attorney at all stages of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel, a petitioner must demonstrate that: (1) counsel's representation fell below "an objective standard of reasonableness" and (2) "affirmatively prove prejudice." *Id.* at 688, 693.

With respect to *Strickland*'s first prong, a petitioner must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court then evaluates these acts or omissions based on the totality of the circumstances. *Id.* In evaluating the circumstances, the question is whether the representation "amounted to incompetence under 'prevailing professional norms.'" *Harrington v. Richter*,

562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690). "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). In sum, the "court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011)) (quoting *Strickland*, 466 U.S. at 689).

Even if the conduct was professionally unreasonable, *Strickland*'s second prong requires a petitioner to establish prejudice. *Strickland*, 466 U.S. at 693–94. In the context of guilty pleas, actual prejudice means demonstrating "a reasonable probability that were it not for counsel's errors, [the petitioner] would not have pled guilty and would have proceeded to trial." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Additionally, the Second Circuit "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003).

In considering ineffective-assistance claims, lower courts may consider either prong of the *Strickland* test first. *Greiner*, 417 F.3d at 319 ("'[T]here is no reason for a court deciding an [ineffective-assistance] claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.'" (quoting *Strickland*, 466 U.S. at 697) (first alteration and omission in original)). The petitioner has the "burden of establishing both constitutionally deficient performance and prejudice." *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

II.     **Merits of Davila's Claim**

Davila asserts that he received ineffective assistance of counsel because Attorney Kaplan incorrectly "advised Petitioner that his conduct of selling drugs to a confidential informant was sufficient to establish the offense of conspiracy." (Doc. 352 at 5.)  This advice in turn caused Davila prejudice because he "would never have entered a plea of guilty." *Id.*  Davila's counsel, Attorney Kaplan, submitted an Affidavit responding to Davila's claim (Doc. 361). The government argues Davilla's claim is without merit.

Attorney Kaplan avers that he "ha[s] no recollection of having advised petitioner that the sale of a controlled substance to a confidential informant was sufficient to establish the offense of conspiracy." (Doc. 361 at 1, ¶ 3.)  Further, he states:

> It is extremely unlikely that I would have given this advice to the petitioner for several reasons.  First, I understood that the government would not be able to prove that the petitioner was in a conspiracy solely based on the fact that the petitioner sold drugs to the confidential informant.  If I had given advice to the petitioner as the petitioner suggests, I would have intentionally misrepresented the state of the law to him.  That is not something that I would have done.  Secondly, it is true that the petitioner and myself had several discussions concerning conspiracy law and I do recall informing the petitioner that the government is alleging that there were several individuals involved in the conspiracy with the petitioner, other than the confidential informant.  During these discussions, I did explain to the petitioner if the government could prove that he had entered in to an agreement with individuals other than the confidential informant, that would be sufficient to prove a conspiracy.

*Id.* at 1-2, ¶ 4.

Davila argues that Attorney Kaplan's statements on the record at the change of plea hearing that "we don't agree that Mr. Davila was in a conspiracy with others," and that "the conspiracy involved some of the individuals that the government has referred to" demonstrate "the lack of a factual basis for the plea, and that the guilty plea was the product of ineffective assistance of counsel and was unknowing, involuntary, and unintelligent." (Doc. 52 at 6 (cleaned up).)  This is a rehash of Davila's drug-quantity argument before the Second Circuit

regarding voluntariness.  For the same reasons, it is rejected in this context: "Davila repeatedly

stated under oath during his plea colloquy that he knew and understood the contents of his plea

agreement, that he wished to plead guilty, and that his decision was voluntary."  *Davila*,

852 F. App'x at 37.  Notably, on direct appeal, Davila did not argue that he was actually innocent

because he had only conspired with a government informant.  Further, with the benefit of new

counsel, at sentencing Davila acknowledged that the facts related in the PSR, which included a

detailed description of his involvement in the conspiracy with individuals other than confidential

informants, were accurate.  Finally, the Court finds Attorney Kaplan's statement that he would

not have misrepresented the state of the law to Davila is credible and therefore accepts that

Attorney Kaplan did not misinform Davila regarding the law.

Davila has failed to carry his burden of proving that Attorney Kaplan's performance was

constitutionally deficient.  His uncorroborated and self-serving assertion that Attorney Kaplan

misrepresented the law to him and that, but for this misrepresentation, he would have proceeded

to trial is not borne out by either Attorney Kaplan's credible affidavit or the record as a whole.

*See Pham*, 317 F.3d at 182.  His claim of ineffective assistance of counsel fails on the merits.

Because Davila presents no basis upon which to grant his § 2255 Motion, it must be DENIED.

## III.    Hearing Requirement

In ruling on a § 2255 motion, the district court is required to hold a hearing, "[u]nless the

motion and the files and records of the case conclusively show that the prisoner is entitled to no

relief."  28 U.S.C. § 2255(b); *see Pham v. United States*, 317 F.3d 178, 185 (2d Cir. 2003)

(finding that § 2255 does not permit summary dismissals of motions that present facially valid

claims).  To warrant a hearing, the defendant's motion must set forth specific facts supported by

competent evidence, raising detailed and controverted issues of fact which, if proved at a

hearing, would entitle him to relief.  *Machibroda v. United States*, 368 U.S. 487, 495 (1962);

*United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987).

Here, an evidentiary hearing is neither necessary nor warranted.  Davila has failed to

show specific facts which, if proved at a hearing, would entitle him to relief.  The claims raised

in Davila's § 2255 Motion may be resolved on the existing record, which conclusively

demonstrates that he is not entitled to relief.  Accordingly, because the Motion and other files

and records in this case "conclusively show that [Davila] is entitled to no relief," there is no need

to conduct an evidentiary hearing on the Motion.  28 U.S.C. § 2255(b).

## IV.  Request for Appointment of Counsel

In a one-sentence request, Davila seeks the appointment counsel of counsel under

18 U.S.C. § 3006A.  (Doc. 325 at 7.)  Section 3006A, the Criminal Justice Act ("CJA"),

provides, in relevant part, that: "Whenever . . . the court determines that the interests of justice so

require, representation may be provided for any financially eligible person who . . . is seeking

relief under [§] . . . 2255 of title 28."  18 U.S.C. § 3006A(a)(2)(B).  However, just because

appointment of counsel is authorized does not mean that it is required.  Rather, whether or not to

appoint counsel in habeas cases is discretionary.  *See Mitchell v. Breslin*, No. 01 CIV. 5520,

2002 WL 31255076, at *1 (S.D.N.Y. Oct. 8, 2002) ("A habeas petitioner has no right to counsel.

. . . [T]he governing rules require the appointment of counsel only when an evidentiary hearing is

needed. The appointment of counsel in all other cases is discretionary." (citations omitted)).

Because Davila has failed to raise an issue in his § 2255 Motion that would entitle him to relief,

it would not be in the interest justice to provide him counsel.  Therefore, Davila's request to

appoint counsel is DENIED as moot.

**CONCLUSION**

Based on the foregoing, Davila's § 2255 Motion (Doc. 352) is DENIED.  Further, the

court declines to issue a certificate of appealability because Davila has not "made a substantial

showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Generally, a movant

meets this burden by demonstrating that "reasonable jurists could debate whether . . . the

[motion] should have been resolved in a different manner or that the issues presented [a]re

adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484

(2000) (internal quotation marks omitted).  Here, Davila has not met this burden.

 SO ORDERED.

Dated at Burlington, in the District of Vermont, this 17th day of October 2022.


/s/ William K. Sessions III
William K. Sessions III
District Court Judge